UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO: 14-20250-GAYLES

UNITED STATES of AMERICA,
    Plaintiff,

v.

KEITH TYRONE JOSEPH,
    Defendant.
_____ /

DEFENDANT'S OBJECTIONS
TO THE PRESENTENCE REPORT AND SENTENCING MEMORANDUM

The defendant, Keith Joseph, by and through undersigned counsel, pursuant to 18 USC § 3553(a); Rule 32(I) of the Federal Rules of Criminal Procedure, Administrative Orders 95-02; 90-26 and U.S.S.G §6A1.3, respectfully files the following Sentencing Memorandum and Objections to the Pre-sentence Report (PSR), for consideration of a sentence that is "sufficient but not greater than necessary" to achieve the purposes of sentencing.

I.     Introduction:

As an initial matter, the defendant has pled guilty, accepted responsibility and acknowledges his guilt in the instant offense. Mr. Joseph accepts full responsibility for his criminal conduct and understands the offense requires the appropriate attention of this Court. Although the Mr. Joseph has plead guilty to a drug trafficking offense, the defendant is not the stereotypical drug trafficker. Rather, he is the stereotypical drug addict who's conduct was in part to support his own drug habit. For the better part of Keith's life he has been addicted to a

1

variety of controlled substances.  While on pretrial release for this offense, Keith was diagnosed with cocaine abuse and cannabis dependence.  For more than the last decade his primary drug of abuse has been cocaine, including cocaine base.

Mr. Joseph stands before the Court in more trouble than he has ever imagined.  Keith is 47 years of age and facing a possible term of imprisonment.  He is remorseful and contrite.  Keith has begun his rehabilitation by waiving many substantial rights, admitting his conduct and pleading guilty with the benefit of a written plea agreement with the government.  These actions have assisted the government and the judiciary through facilitating the administration of justice without the need of a trial or expending substantial resources.  The defendant wishes to repay society further through serving this Court's sentence, successfully completing any general or special conditions of any sentence imposed and achieving total rehabilitation.

With respect to his commission of the instant drug offense, Mr. Joseph acknowledges that he knew what he was doing.  On July 29, 2013, Keith knowingly and willfully participated in a conspiracy with his co-defendants to distribute certain controlled substances at an apartment complex located on NW 3rd Avenue in Miami.  However, Mr. Joseph suggests the evidence shows his participation was minor when compared with his co-defendant's and his role in the instant offense was limited to a few hours on a single day.  The defendant did not make significant amounts of money over a long period of time nor did he live a drug traffickers lavish lifestyle.  The PSR correctly points outs that no aggravating role is warranted.  However, Mr. Joseph suggests the evidence proves he was nothing more than a "runner" for his co-defendants with no decision making responsibilities, supervision of others or managerial positions nor did he share in the lions share of any profits.  Additionally, the matter involves arguably minimal

2

quantities of drugs when compared to what this Court sees on a daily basis. In fact, this matter originated in the State Court system and appears to have only come before this Court because of the criminal backgrounds of the co-defendants and the presence of the firearms both of which having nothing to do with Mr. Joseph. Therefore, the defendant would ask the Court to consider the limited extent of his participation, the nature and circumstances of the offense and his offender characteristics when deciding what is a sufficient but not greater than necessary punishment.

II.     **Objections:**

1. **Page 6, ¶9,10,11 & 14**: The defendant objects to the inclusion within the PSR, any mention of the assault rifle and other firearm related material found inside apartment 12. The defendant having been charged twice on the same facts, by two separate prosecuting agencies, has never been charged with a weapons offense, nor been charged with possessing a firearm by an otherwise prohibited person despite the qualifying predicate convictions. There are no facts in this case to indicate that Mr. Joseph had any knowledge of any firearms or that the use or possession of any firearms was part of Mr. Joseph's conspiratorial conduct. Had the State of Florida had any evidence to suggest Mr. Joseph knew of the presence of the firearm or that a firearm was being used during the commission of any offense, they would have charged him with possessing a weapon either actually or constructively. Similarly, the federal government either presented facts to the grand jury and they decided there was no probable cause to indict Mr. Joseph for a weapons offense or the government simply had no evidence to present to the grand jury in this respect. Either way, there is no evidence to support including the weapons as part of Mr. Joseph's conspiratorial conduct. Even thought the defendant believes the facts and law

3

support deleting these portions of the PSR, it should be noted that there is prejudice to Mr. Joseph within the Bureau of Prisons should these facts be contained within his PSR. Mr. Joseph is clearly in need of drug treatment and should the Court decide to incarcerate Keith, reference to firearms in the pre-sentence report may exclude participation in the RDAP drug program while in BOP custody.

      2. **Page 7, ¶13**: Mr. Joseph objects to probation's conclusion that the 37.5 grams of crack, 28 grams of powder cocaine and 21.9 grams of heroin was confiscated from Mr. Joseph. These drug quantities were found inside apartment 12 during the execution of the search warrant many of which were in closed containers or otherwise hidden throughout the apartment which Mr. Joseph has no other connection to. Although, these drug quantities are consistent with the lab reports provided in discovery, Mr. Joseph objects to the those amounts being considered in his guideline calculation. Understanding that Mr. Joseph has pled guilty to a conspiracy charge, not all drugs quantities are automatically included within a defendant's guideline calculation nor are all actions of the co-defendants foreseeable as relevant conduct. Under the circumstances of this case, there are no facts to suggest Mr. Joseph knew of the presence of those drugs or those drug quantities. Further, there is no evidence to suggest it is reasonably foreseeable that drugs in those quantities would be present within the apartment or part of the conspiracy and conduct to which Mr. Joseph agreed to participate in.

      In considering this objection, the Court should consider the same arguments raised in paragraph 1, herein regarding the firearms. Specifically, the State of Florida never charged and a federal grand jury did not return an indictment for charges that require minimum mandatory sentences. 37.5 grams of crack cocaine carries minimum mandatory sentences in both State and

Federal Court, 28 grams of powder cocaine as well as 21.9 grams of heroin carry a minimum mandatory sentence in our State and federal courts respectively.  Had either agency had evidence to suggest the defendant either actually or constructively possessed those amounts of drugs Mr. Joseph would have been charged accordingly.  This lack of knowledge proves that those drug quantities were not known to Mr. Joseph and therefore not a foreseeable consequence of his conduct.  Additionally, there is no evidence or facts presented that Mr. Joseph was ever part of any other conspiratorial conduct outside this isolated date and time or that Mr. Joseph knew the extent of the conduct Mr. McDuffie or Mr. Murphy were involved in.

      3. **Page 7, ¶12:**  Mr. Joseph believes his arrest and release on bond in the State matter was in July of 2013, not 2014 as indicated by probation.  Mr. Joseph also does not believe a that an alias capias was issued in his State matter on July 15, 2013.  Mr. Joseph had been out of custody on bond for more than 10 months without any violation of bond and never missed a court date.  Neither of these objections effect the defendant's guideline calculation.

      4. **Page 7, ¶14: Role Assessment:**   Although Mr. Joseph agrees with probation's conclusion that no aggravating role adjustment is applicable, the defendant believes that because his participation in the offense was minor when compared with that of his co-defendants, the defendant should receive a minor role reduction of 2 levels pursuant to U.S.S.G. § 3B1.2(b).

      A minor participant is someone who is less culpable than most other participants but whose role is not minimal.  *U.S.S.G. §3B1.2 n.4(2013)*.  A defendant who performs a limited function in concerted criminal activity is not precluded from consideration for an adjustment under this guideline.   The guideline application notes instruct that this is a heavily fact-based inquiry and the court's determination will not be overturned unless it is clearly erroneous.  *United*

*States v. Davis*, 902 F.2d 860, 861 (11th Cir. 1990). *United States v. Calderon*, 127 F.3d 1314, 1341 (11th Cir. 1997).

The facts are clear that Mr. Joseph was simply a "runner" or "courier" for McDuffie and / or Murphy on that particular date and time. There is nothing in the record to suggest that Mr. Joseph was involved in the planning or the organization of such criminal activity. There is nothing to suggest Mr. Joseph had any responsibility other than to distribute small street level sales of narcotics obtained from the fire extinguisher box on this date. Although Mr. Joseph admits to his offense conduct, there is no evidence to suggest Mr. Joseph had any knowledge of the extent of Murphy or Mc Duffie's conduct or the quantity of narcotics inside the apartment. There is nothing in the record to suggest Mr. Joseph enjoyed the fruits of any large scale narcotics operation or lived an extravagant lifestyle from unlawful drug proceeds. In fact the evidence suggest the exact opposite. The facts simply show that Mr. Joseph played a limited and minor role in this crime and he should be treated as such.

5. **Page 8, ¶19: Offense Level Computation:** As an initial matter, Mr. Joseph agrees with probations conclusion that U.S.S.G. § 2D1.1, is the applicable guideline for this offense. However, Mr. Joseph believes that he should receive the benefit of the recent amendment to the drug quantity table by the Sentencing Commission which was supported by the Department of Justice and has since been approved by Congress. Should the Court agree, the defendant's total offense level should be reduced by 2 levels.

a. **The Drug Quantity Table Amendment:**

The amendment revises the guideline applicable to drug trafficking offenses by changing how the base offense levels in the Drug Quantity Table in §2D1.1, incorporates the statutory

minimum mandatory penalties for such offenses.  When Congress passed the Anti-Drug Abuse Act of 1986, the Sentencing Commission responded by generally incorporating the statutory mandatory minimum sentences into the guidelines and extrapolating upward and downward to set guideline ranges for all drug quantities.  The quantity thresholds in the Drug Quantity Table were set so as to provide base offense levels corresponding to guideline ranges that were slightly above the statutory mandatory minimum penalties.  The amendment changes how the applicable statutory mandatory minimum penalties are incorporated into the Drug Quantity Table while maintaining consistency with such penalties.

   The Commission this year [2014] has prioritized addressing federal prison costs and capacity with a continued commitment to public safety.  In considering this amendment, the Commission held a hearing on March 13, 2014, and heard expert testimony from the Executive Branch, including the Attorney General and Director of the Federal Bureau of Prisons.  The Commission also received substantial written public comment, including from the Federal Judiciary, members of Congress, law enforcement groups and members of the public.  The Commission determined that setting the base offense levels slightly above the mandatory minimum penalties is no longer necessary to achieve its stated purpose.

   The amendment was also motived by the significant overcapacity and costs of the Federal Bureau of Prisons.  The Sentencing Reform Act directs the Commission to ensure that the sentencing guidelines are "formulated to minimize the likelihood that the Federal prison population will exceed the capacity of the Federal Prisons".  *See 28 USC § 994(g)*.  Reducing the federal prison population and the costs of incarceration has become an urgent consideration.  The Commission observed that the federal prisons are now 32 percent overcapacity, and drug

trafficking offenders account for approximately 50 percent of the federal prison population. The Commission received testimony from the Department of Justice and others that spending on federal prisons is now crowding out resources available for federal prosecutors and law enforcement, aid to state and local law enforcement, crime victim services and crime prevention programs, all of which promote public safety. In response to these concerns, the Commission considered the amendment an appropriate step toward alleviating the overcapacity of the federal prisons. The Commission also carefully weighed public safety concerns and concluded that the amendment should not jeopardized public safety.

The Sentencing Commission stated that existing statutory enhancements, such as those guideline enhancements for offenders who use violence, have an aggravating role in the offense, or are repeat or career offenders, ensure that the most dangerous or serious offenders will continue to receive appropriately severe sentences. The Commission was specifically addressing offenders such as Mr. Joseph who falls into that category of those who are not "the most dangerous or serious offenders" and could be argued are relatively minor drug offenders. Therefore, Mr. Joseph would ask the Court to reduce by 2 levels his offense level pursuant to the amended drug quantity table.

      b.    **Drug Quantity:**

Additionally, the defendant objects to probation's offense level calculation using the drug quantities for the narcotics found within the apartment. Specifically, the defendant would object to the inclusion the 37.5 grams of crack cocaine found within the apartment and the additional powder cocaine and heroin. Mr. Joseph believes that his offense level should be calculated based solely on the narcotics found within the fire extinguisher box which includes less than 4 grams of

heroin and less than 28 grams of powder cocaine as contained within the Miami-Dade laboratory analysis report. The crack cocaine found within the fire extinguisher box was never analyzed by the crime lab, therefore it should not be factored into this calculation.

Should the Court agree with Mr. Joseph and hold him accountable for only the drug amounts the defendant had knowledge of and contained in the fire box, those amounts would total 28 grams of powder cocaine and 4 grams of heroin. The marijuana equivalent for the powder cocaine would equal 5.6 kilos of marijuana. The marijuana equivalency for the amount of heroin involved would equal 4 kilos of marijuana. Therefore, the defendant's drug quantity should be based on 9.6 kilos of marijuana, resulting in a base offense level of 14 before acceptance of responsibility, consideration of his requested role reduction and the amendment to the drug quantity table.

      6. **Page 8, ¶21:  Specific Offense Characteristics:**  Mr. Joseph objects to probation's conclusion that a 2 level enhancement is warranted pursuant to U.S.S.G. § 2D1.1(b)(1), for possessing a weapon.

**III.**    **Factual and Legal Basis for Sentence Mitigation:**

Certainly, this Court knows well the sentencing mandate and an officious recitation of the entire body of law relating to *United States v. Booker*, 543 U.S. 220 (2005), and the factors set forth at 18 U.S.C. § 3553(a), is unnecessary. Instead, a focus on the foregoing mitigating factors and their application is most appropriate. All of the foregoing factors weigh in favor of a minimally sufficient sentence to achieve the purposes of sentencing.

      a.    **Offender Characteristics:**

Mr. Joseph was born October 31, 1967 and is presently 47 years old. Prior to his

incarceration in this case, the defendant was living with his mother Theresa Starling who is 65 years old and in ill health.  Ms. Starling suffers from severe emphysema and high blood pressure and is receiving social security disability.  The defendant not only lives with his mother but has also been her primary care giver prior to his incarceration.  Mr. Joseph's family is aware of his incarceration and conviction in this case and remains supportive.  The defendant has never had a relationship with his biological father who also failed to provide any support for the family or Keith either financially or emotionally.

      Although Keith maintains his upbringing was relatively normal and void of any abuse, as a child, Keith moved from place to place and for the most part lived with aunts during his early childhood years.  When he was 7 years old, Keith went to live with his maternal aunt Marva Cooper who was then employed as a housekeeper.  At the age of 12, Keith went to live with another Aunt Betty Johnson and resided with her for approximately a year.  Keith maintains his aunts treated him as family and describes his childhood as a good childhood considering the circumstances.  Although not poor, the family struggled to get by financially.

      The defendant eventually returned home to Miami and again lived with his biological mother.  Keith completed the 11th grade at Miami Jackson Senior High.  The defendant dropped out of school and began working as a landscaper and as a filing clerk for Lindsey Hopkins Technical Education Center in an effort to help support himself and his family.  The defendant also sought training at a vocational technical school called "Apex".

      In 2005, the defendant moved to Brunswick, Georgia where he eventually married Michelle Joseph worked as a social worker.  The defendant was able to obtain employment as a full time maintenance worker at the College of Coastal Georgia in Brunswick, GA.  After being

terminated from that position, the defendant was able to obtain employment as a full time social services technician at Gateway Behavior Health Services, a mental health and substance abuse treatment facility located in Georgia.  The defendant resigned from that position after he and his wife separated.  After the separation from his wife, the defendant moved back to Miami in approximately 2012.

Upon returning to Miami, the defendant resided with his mother in an apartment located on NW 2nd Avenue, in the City of Miami.  According to US Probation, a home visit of the residence was conducted while the defendant was on bond in this case.  US Probation found the residence was a 1 bedroom, 1 bath located in low income neighborhood.  While living with his mother, the defendant contributed to the expenses by providing approximately $200 dollars in food stamp benefits which he received.

The defendant acknowledges that he does have a criminal history, however that criminal history can best be described as isolated incidents of street level dealing of drugs.  Although not diminishing the seriousness of those crimes, the defendant received no more than a time served sentence for most of his offenses.  Other than a 60 day sentence for a violation of probation, the present incarceration of the defendant after his violation of bond for testing positive for drugs has been the longest period of incarceration ever.

Mr. Joseph reported no history of mental health problems or any treatment for such condition.  The defendant does however report a significant history of substance abuse.  Keith began using drugs at the age of 14.  He began consuming alcohol at the age of 15.  His substance abuse escalated to the use of hard drugs by the age of 18, including the use of cocaine in different forms.  The defendant states that he has used drugs and alcohol on a daily basis up until his arrest

in this case and states that he has never sought treatment for his drug addictions. A condition of the defendant's bond in this case included drug treatment and testing. On May 13, 2014, the defendant tested positive for cannabis and cocaine. A second test on May 16, 2014, resulted in a second positive test for the presence of cocaine. Subsequently, the defendant was referred for drug treatment, however he was taken into custody for violations of his bond due to the positive drug test results. The defendant's history and characteristics proves he is in need of drug testing. Should the Court believe incarceration is the appropriate sentence in this case, the defendant will be asking for the in-custody drug program. However, if the Court is going to consider a period of supervision to be the appropriate punishment, certainly any condition of his supervision must include mandatory drug treatment.

## CONCLUSION:

It appears this is exactly the type of case the Sentencing Commission was considering during their discussions when reducing the drug quantity table and addressing the federal prison population and the expenditure of resources for otherwise minor drug offenders. This matter was pending in State Court for more than 10 months before it was ever brought before this Court, however none of the facts changed. The facts as they relate to Mr. Joseph suggest he was nothing more than a runner for others who engaged in this criminal activity to support his daily lifestyle and his drug abuse. Mr. Joseph accepts full responsibility for his actions and know that this criminal behavior can't continue. He is 47 years old. Mr. Joseph recognizes that any further criminal conduct will result in having to miss a significant portion of his life moving forward. That is something that Mr. Joseph is not willing to jeopardize. Keith recognizes what he has done and has been working on achieving full rehabilitation. Respectfully, Mr. Joseph asks this

Honorable Court for a sentence that is sufficient to satisfy the purpose of sentencing but one that is not greater than necessary.

        Respectfully submitted;
        *s/; Peter T. Patanzo*
        Peter T. Patanzo, Esq.
        Benjamin, Aaronson & Patanzo, PA
        1 Financial Plaza, suite 1615
        Fort Lauderdale, Florida 33394
        (954) 779-1700 phone
        (954) 779-1771 fax
        ppatanzo@bellsouth.net
        Counsel for Mr. Joseph

## CERTIFICATE OF SERVICE

      I HEREBY CERTIFY that a true and correct copy of the foregoing has been uploaded to CM / ECF and served on all those associated with the electronic filing system this 10th day of December, 2014.

        *s/; Peter T. Patanzo*
        Peter T. Patanzo, Esq