UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. **14-20250-CR-GAYLES**

**UNITED STATES OF AMERICA**

**vs.**

**KEITH TYRONE JOSEPH,**

   **Defendant.**
_____ /

**UNITED STATES' RESPONSE TO
DEFENDANT'S OBJECTIONS TO PRE-SENTENCE INVESTIGATION REPORT**

The United States of America, through the undersigned Assistant United States Attorney, files this response in opposition to Keith Tyrone Joseph's Objections to the Pre-Sentence Investigation Report ("PSR") (DE:94). For all of the reasons listed below, the Defendant's objections should be denied.

**FACTUAL BACKGROUND[1]**

On or about July 29, 2013, at approximately 5:00 p.m., Detectives from the Miami-Dade Police Department ("MDPD") observed an individual later identified as Keith Tyrone Joseph ("Defendant") conduct what appeared to be three separate hand to hand drug transactions on the second floor of 1117 NW 3rd Avenue. All of the sales were conducted in the same routine fashion. Three separate buyers approached the Defendant on the second floor of 1117 NW 3rd Avenue and handed him United States currency. The Defendant walked away from the buyers

---

[1] The facts listed are taken from the factual proffer that was signed by the Defendant during his change of plea hearing.

into a small hallway. Seconds later, he returned and handed the buyers a small object. The buyers went to their vehicles and left the location.

Immediately after each of the buyers left the location, MDPD Detectives stopped each of the buyer's vehicles to retrieve the contraband. In all of the car stops, the Detectives observed or recovered controlled substances. Those substances recovered from the buyers were sent to the Miami-Dade Police laboratory for testing and the results were positive for the presence of crack/cocaine. Each buyer was arrested and prosecuted by the Miami-Dade State's Attorney's Office.

After each drug sale was completed, MDPD Detectives observed the Defendant walk to apartment # 12, which was located on the third floor. According to MDPD Detectives, the Defendant knocked on the door and a male later identified as Lamar Cochise Murphy ("Murphy") opened the door. The Defendant handed Murphy what appeared to be United States currency and then proceeded back to the second floor to make more drug sales.

During the surveillance of the Defendant, MDPD Detectives observed an individual later identified as Demetrius Allen McDuffie ("McDuffie") arrive at the location in a Black Dodge Charger. McDuffie exited the vehicle with several bags of groceries and called the Defendant for help. The Defendant met McDuffie at the vehicle and helped take the groceries to apartment # 12.

After the Defendant went back to the second floor, MDPD Detectives approached the location and placed him under arrest. MDPD Detectives recovered approximately five (5) clear baggies of crack cocaine, twenty-three (23) yellow baggies of heroin, seventeen (17) purple baggies of powder cocaine, and one (1) clear orange baggie of powder cocaine from a fire

extinguisher box that was located on a wall near the Defendant. MDPD Detectives also recovered $278 from the Defendant's right front pants pocket.

MDPD Detectives proceeded to the third floor and encountered an individual with the initials "J.T.C." leaving apartment # 12.  As J.T.C. was leaving the apartment, MDPD Detectives looked inside the apartment and observed: (i) one assault rifle leaning against the wall next to the television; (ii) one clear ziploc bag that contained suspected narcotics on the television console; and (iii) an unknown amount of United States currency on the television.  MDPD Detectives also observed Murphy sitting on the living room couch in close proximity to the semi-automatic rifle and McDuffie standing in the kitchen placing items in the refrigerator.  Murphy and McDuffie were detained while Det. Terrence White ("White") appeared before the Honorable Judge William Thomas ("Judge Thomas") of the Circuit Court for the Eleventh Circuit for a State authorized search warrant.

Judge Thomas authorized a search of the above-mentioned premises and on July 30, 2013, at approximately 12:03 a.m., MDPD Detectives executed the search warrant.  Upon entering the living room, MDPD Detectives recovered one clear sandwich bag that contained 275 yellow baggies of suspected heroin, two clear bags of suspected heroin, and $158 in United States currency from the television console.

A search of the southeast bedroom revealed one New Balance shoe box that contained two crack/cocaine "cookie" sheets and approximately $448 United States currency.  MDPD Detectives also recovered one pair of green shorts from the southeast bedroom. Inside the shorts pockets', MDPD Detectives recovered one clear bag of powder cocaine and one clear bag of suspected heroin.

Thereafter, MDPD Detectives searched the kitchen and recovered one Timberland shoe box from the top of the kitchen cabinet that contained: (i) two-hundred and eight (208) orange baggies of suspected powder cocaine; (ii) fifty (50) yellow baggies of suspected heroin; (iii) thirty-seven (37) clear baggies of suspected crack/cocaine; and (iv) approximately $409 United States currency.

## ARGUMENT

### A. The Defendant should be held accountable for the drugs recovered in the apartment.

The Defendant argues that he should not be held accountable for the 37.5 grams of "crack" cocaine, 28 grams of powder cocaine and 21.9 grams of heroin recovered from 1117 NW 3rd Avenue, apartment #12.  According to the Defendant, "there are no facts to suggest [the Defendant] knew of the presence of those drugs or those drug quantities" (DE94:4).  There is also "no evidence to suggest it is reasonably foreseeable that drugs in those quantities would be present within the apartment or part of the conspiracy and conduct to which [the Defendant] agreed to participate in." (DE94:4).  Therefore, the Defendant objects to those amounts being considered in his guideline calculation.

The Defendant is wrong.  A Defendant is guilty of conspiracy when: (i) there was an agreement between the Defendant and at least one person; (ii) the Defendant knew the object of the conspiracy and the object was illegal; and (iii) the Defendant knowingly and voluntarily participated in the conspiracy." United States v. Curbelo, 726 F.3d 1260, 1269 (11th Cir. 2013). A co-conspirator may be found guilty for substantive criminal offenses by a co-conspirator during the course and in furtherance of the conspiracy.  United States v. Mothersill, 87 F.3d 1214, 1217 (11th Cir. 1996). See Pinkerton v. United States, 328 U.S. 640, 643 (1946).

However, when the District Court is attempting to determine the correct sentencing guideline range for a Defendant's responsibility for the acts of his co-conspirators, the appropriate standard for the court to use is the United States Sentencing Guideline definition. Mothersill at 1270 n. 4. Under U.S.S.G. § 1B1.3(A) and (B), a Defendant will be held accountable for "all acts committed . . . aided, abetted . . ." during the conspiracy and "all reasonable foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity.

First, the Defendant clearly aided and abetted McDuffie and/or Murphy in selling drugs at the apartment complex located at 1117 NW 3rd Avenue. This implicit agreement is proven through the MDPD Detectives observations on July 29, 2013. On that day, MDPD Detectives observed the Defendant engage in what appeared to be three separate hand to hand drug transactions. After the sales were completed, MDPD Detectives immediately stopped each of the buyers after they left the vicinity of 1117 NW 3rd Avenue. During the stop of the buyer's vehicles, "crack" cocaine was either recovered or observed in their possession.[2] The recovery of the controlled substances confirmed that the Defendant was actually selling drugs during the Detectives observations.

In addition, MDPD Detectives observed the Defendant walk to the third floor of the apartment complex and approach apartment# 12 after each sale. Once the Defendant arrived at that apartment he knocked on the door and handed what appeared to be United States currency to Murphy. Murphy took the currency and the Defendant returned to the second floor.

The Detectives quickly arrested the Defendant. Once he was in custody, MDPD Detectives approached the fire extinguisher box located in the 2nd floor hallway and recovered

---

[2] MDPD Detectives recovered "crack" cocaine from two of the buyers. They were unable to recover drugs from the third buyer because she swallowed the drugs.

five (5) clear baggies of crack cocaine, twenty-three (23) yellow baggies of heroin, seventeen (17) purple baggies of powder cocaine, and one (1) clear orange baggie of powder cocaine. Based upon all of their observations, including the Defendant approaching apartment #12, the Detectives ultimately applied for a search warrant.

During the search of the location, they recovered drugs that were similarly packaged to the drugs that were recovered from the Defendant. Not only were the drugs similarly packaged, but the drugs recovered from the apartment and recovered from the defendant were of the same type. For instance, MDPD Detectives recovered 5 clear baggies of "crack" cocaine and 23 yellow baggies of heroin from the Defendant. When the search warrant was executed, MDPD Detectives also recovered 275 matching yellow baggies of heroin and 37 clear baggies of "crack" cocaine." Thus, there was ample evidence to demonstrate the Defendant took part in the conspiracy and aided and abetted his co-conspirators.

In addition, it was clearly foreseeable that McDuffie and/or Murphy would be in the possession of controlled substances. The Defendant has indicated that he was only a "runner" or "courier" for McDuffie and/or Murphy (DE94:6). However, the Defendant was more than that. The Defendant sold drugs, at the very least, on three separate occasions. After each sale, he took the proceeds to apartment #12 and handed them to Murphy. If the Defendant is taking currency back to the apartment after the sale, then it is only logical that he was receiving the drugs to make those sales from apartment # 12. Thus, it is reasonably foreseeable that if the co-conspirators are giving the Defendant the drugs from the apartment to sell that there are additional drugs being possessed inside that apartment.

**B.     The Defendant should not receive a two level reduction for minor role.**

The Defendant contends that he is entitled to a mitigating role adjustment pursuant to U.S.S.G. § 3B1.2.  The Government contends, however, as set forth below, that the Defendant cannot demonstrate entitlement to a minor role reduction under the two-part standard established by the Eleventh Circuit in United States v. De Varon, 175 F.3d 930 (11th Cir. 1999) (en banc).

In De Varon, the Eleventh Circuit enunciated two guiding principles to govern the determination of a Defendant's role in the offense.  First, the court held that sentencing courts "must assess whether the [D]efendant is a minor or minimal participant in relation to the relevant conduct attributed to the [D]efendant in calculating her base offense level." De Varon, 175 F.3d at 940.  When a Defendant's relevant conduct for sentencing purposes is limited solely to the actual conduct for which the defendant is convicted, the Defendant is generally not entitled to a minor role reduction.  De Varon, 175 F.3d at 941 ("where the relevant conduct attributed to a defendant is identical to [his] actual conduct, []he cannot prove that [ ] he is entitled to a minor role adjustment simply by pointing to some broader criminal scheme in which [ ] he was a minor participant but for which [ ] he was not held accountable.").

Second, the District Court should consider the Defendant's relative culpability in comparison to that of other participants who: (a) are identifiable or discernable from the evidence, and (b) were involved in the conduct attributable to the Defendant.  See De Varon, 175 F.3d at 944.  While acknowledging that the Guidelines "clearly contemplate some assessment of relative culpability[,]" the Court emphasized that "not all participants may be relevant to this inquiry[,]" and instructed the sentencing courts to "look to other participants only to the extent that they are identifiable or discernable from the evidence."  Id.

1.     **The Relevant Conduct**

In this case, the Defendant pleaded guilty to conspiracy to possess with the intent to distribute a controlled substance, in violation of Title 21, United States Code, Section 846.  The Defendant should be held responsible for the drugs he possessed in the fire extinguisher box and the drugs recovered from inside apartment #12.  It is the Government's theory that the drugs recovered in the apartment were used to sell on the second floor of the apartment complex. Therefore, the relevant conduct attributed to the Defendant is identical to his actual conduct, which is conspiracy.

Furthermore, the Defendant's role in the relevant conduct attributed to him is that of a drug seller at the behest of McDuffie and/or Murphy.  The Defendant's status as a [seller,] however, "in and of itself is not dispositive of whether [he] is entitled to or precluded from receiving a downward adjustment for role in the offense." De Varon, 175 F.3d at 942.  Instead, this Court should consider any evidence related to the Defendant's conduct as a seller in the conspiracy, including his assigned tasks in the scheme. Id.

One factor the courts consider when assessing the Defendant's role in his relevant conduct is the amount of drugs sold.  Id. at 942.  Here, the Defendant was entrusted to sell a variety of drugs to local buyers.  In no way was the Defendant selling kilograms of cocaine and heroin.  In fact, when the MDPD Detectives searched the fire extinguisher box they recovered approximately five (5) clear baggies of crack cocaine, twenty-three (23) yellow baggies of heroin, seventeen (17) purple baggies of powder cocaine, and one (1) clear orange baggie of powder cocaine.

However, the depth of how much drugs were to be sold is not comprehendible until you consider the drugs recovered from the apartment. MDPD Detectives recovered: (i) two-hundred

8

and eight (208) orange baggies of suspected powder cocaine; (ii) fifty (50) yellow baggies of suspected heroin; and (iii) thirty-seven (37) clear baggies of suspected crack/cocaine. Therefore, there was a large amount of drugs involved in this case.

Another fact related to the Defendant's conduct in the instant case is the financial stake in the commission of the crime. While the Defendant did not have an equity interest in the drugs that were being sold, in that he was only going to be paid a percentage of the drugs sold, the Defendant was going to be paid for his drug selling. One can assume the more drugs sold the more money he would make. Thus, the Defendant had a financial interest in the commission of this crime.

### 2. Relative culpability

There are two other "discernable" participants that this Court may use in the relative culpability analysis. The two participants are McDuffie and Murphy. As stated above, Murphy was the person who accepted the United States currency after each drug sale. McDuffie, with Murphy, was present in the location when the MDPD Detectives observed the drugs and AK-47 variant next to the wall in the living room.

The task of this Court is to determine whether "the [D]efendant was less culpable than most other participants in [his] relevant conduct." Id. (emphasis added). For instance, in De Varon, the court addressed the factual situation of a drug courier who claimed he was less culpable than the individual who provided the drugs and found that, absent more evidence about the supplier's involvement in the overall scheme, a district court may validly conclude that the courier is not sufficiently less culpable than the supplier so as to warrant a minor role in the offense reduction. See Id. at 946.

In this case, the Defendant is just as culpable as the other participants because he: (i) made the decision to commit the crime; (ii) sold drugs to multiple buyers at the location, and (iii) took the proceeds from the sales back to apartment # 12. McDuffie and/or Murphy may have supplied the Defendant with the drugs, but the Defendant brought the plan to fruition and ultimately completed the crime.

In any event, to the extent that any of the discernable participants may be deemed more culpable than the Defendant, it is important to recognize that "[t]he fact that a [D]efendant's role may be less than that of other participants engaged in the relevant conduct may not be dispositive of role in the offense, since it is possible that none are minor or minimal participants." See Id. at 944 (emphasis added).

### C. The Probation Department correctly reduced the Defendant's base offense by two levels.

Section 3582(c)(2) "establishes a two-step inquiry.[3] A court must first determine that a reduction is consistent with § 1B1.10 before it may consider whether the authorized reduction is warranted, either in whole or in part, according to the factors set forth in § 3553(a)." Dillon v. United States, 560 U.S. 817, 826 (2010). Under application note 1(A) to Section 1B1.10: "Eligibility for consideration under 18 U.S.C. § 3582(c)(2) is triggered only by an amendment listed in subsection (d) that lowers the applicable guideline range (i.e., the guideline range that corresponds to the offense level and criminal history category determined pursuant to §1B1.1(a), which is determined before consideration of any departure provision in the Guidelines Manual or any variance)."

---

[3] The second step of the analysis requires the court to consider other factors, including the factors set forth in § 3553(a), to determine whether or not a sentenced defendant should receive a reduction if he is eligible. For purposes of this response, the Government will only address the first step since the Court will consider the § 3553(a) factors during the sentencing hearing.

The Defendant is correct that Amendment 782 reduced the guideline range applicable in his case. Specifically, the base offense level in this case is now 24, pursuant to Section 2D1.1 as amended by Amendment 782, made retroactive by Section 1B1.10(d). Pursuant to U.S.S.G. § 2D1.1(b)(1), a two point level enhancement was applicable because a dangerous weapon was possessed. The adjusted offense level was 26; however, because the Defendant pleaded guilty, he received a three level deduction and his total offense level is 23. At the established criminal history category of II, this would result in a sentencing range of 51 – 63 months. This is a reduction from the previously applied range of 63-78 months. Therefore, the probation office has already applied the reduction pursuant to Amendment 782.

## CONCLUSION

For the reasons articulated above, the United States respectfully requests that the Defendant's objections to the PSI on this basis should be overruled.

Respectfully submitted,

WIFREDO A. FERRER
UNITED STATES ATTORNEY

By:  */s/ Maurice A. Johnson*
Maurice A. Johnson
Assistant United States Attorney
Court Identification No. A5501806
99 Northeast 4th Street
Miami, Florida 33132-2111
Tel: (305) 961-9454
Fax: (305) 530 -7976

## **CERTIFICATE OF SERVICE**

  **I HEREBY CERTIFY** that a true and correct copy of the foregoing was uploaded onto the Court's CM/ECF system this 12th day of December, 2014 to: Peter Thomas Patanzo, 1 Financial Plaza, Ft Lauderdale, Florida 33394.

                */s/ Maurice A. Johnson*
                Maurice A. Johnson
                Assistant United States Attorney